UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ x
WESTPORT INSURANCE CORPORATION,

                              Plaintiff,      Case No. 10 CV 2188 (RMB) (THK)

v.

THE HAMILTON WHARTON GROUP, INC.,
WALTER B. TAYLOR, individually,

and

INTER-COMMUNITY MEMORIAL
HOSPITAL OF NEWFANE, INC., et al.,

                              Defendants.
------------------------------ x
THE HAMILTON WHARTON GROUP, INC. and
WALTER B. TAYLOR, individually,

                           Third-Party Plaintiffs,

v.

IAAC, Inc., and INDEPENDENT INSURANCE
AGENTS & BROKERS OF NEW YORK, INC.

                           Third-Party Defendants.
------------------------------ x

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO
LOCAL RULE 56.1 OF THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

Pursuant to Local Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, Defendants The Hamilton Wharton Group, Inc., ("Hamilton Wharton") and Walter B. Taylor, individually ("Taylor") (collectively, "Defendants"), Inter-Community Memorial Hospital of Newfane, Inc. n/k/a Eastern Niagara

1

Hospital, Inc., Integrated Care Systems, LLC, and the Healthcare Facilities Defendants[1], hereby respectfully submit the following statement of undisputed facts as to which there is no genuine issue to be tried.

I.     THE PARTIES

    1.     Westport Insurance Corporation ("Westport" or "Plaintiff") is incorporated under the laws of the State of Missouri with its principal place of business located in Overland Park, Kansas. (Compl. ¶ 5.[2])

    2.     Defendant Hamilton Wharton is a New York corporation with its principal place of business located at 110 Wall Street, New York, New York. (Declaration of Walter B. Taylor ("Taylor Dec."), dated October, 27, 2010, ¶ 2.). Hamilton Wharton specializes in marketing medical and workers' compensation insurance programs. Employers and insurance brokers interested in workers' compensation come to Hamilton Wharton to design safety groups, group captive programs, and other alternative risk programs. (Id. ¶ 4.)

    3.     Defendant Taylor is an individual residing at 5 Franklin Place, Montclair, New Jersey 07042. (Id. ¶ 1.) Taylor was a shareholder and Managing Director of Hamilton Wharton at all times relevant to this action. (Id. ¶ 2; Answer ¶ 8.[3])

---

[1] The Healthcare Defendants consist of Defendants A&T Healthcare, LLC, Bezalel Nursing Home Company, Inc., Creative Lifestyles, Inc., E.R.N.H., Elmhurst Care Center, Inc., George Katz d/b/a The New Brighton Manor of Long Beach Home for Adults, Suzie Klein d/b/a The New Brighton Manor of Long Beach Home for Adults, Highland Care Center, Inc., Hudson Valley Home Care, Inc., New South Shore Manor, Nyack Manor Nursing Home, Royal Health Care Services, Inc., The Dennelisse Corporation, The Estate of Paul C. Maggio d/b/a Patchogue Nursing Center, Unique People Services, Inc., and United Presbyterian and Reform Adult Ministries d/b/a Flushing House.

[2] The Complaint in this action is annexed as Ex. B to the Declaration of Kevin L. Smith ("Smith Dec."), dated Oct. 29, 2010.

[3] The Answer in this action is annexed as Ex. C to the Smith Dec.

4. Defendant Taylor is an insurance broker licensed by the State of New York. (Taylor Dec. ¶ 3.)

5. Defendant Inter-Community Memorial Hospital of Newfane, Inc. is a New York corporation with its principal place of business located in Newfane, New York. (Compl. ¶ 9.)

6. Defendant Integrated Care Systems, LLC is a New York limited liability company with its principal place of business in Newfane, New York. (Compl. ¶ 10.)

7. Defendant A&T Healthcare, LLC ("A&T") is a New York limited liability company located in New City, New York. (Compl. ¶ 11.)

8. As of April 30, 2000, Defendant Brookhaven Beach Health Related Facility ("Brookhaven") had been purchased by Brookhaven Rehabilitation & Health Care Center LLC, a New York limited liability company with its principal place of business located in New York, New York. (Compl. ¶ 12.)

9. As of December 31, 1998, Defendant Rockville Residence Manor ("Rockvllle") had been purchased by Rockville Residence Manor LLC, a New York limited liability company with its principal place of business located In New York, New York. (Compl. ¶ 13.)

10. Defendant American Geri-Care, Inc. ("Geri-Care") is a New York corporation with its principal place of business located in New York, New York. (Compl. ¶ 14.)

11. Defendant Bezalel Nursing Home Company, Inc. ("Bezalel") is a New York corporation with its principal place of business located in New York, New York. (Compl. ¶ 15.)

12. Defendant Creative Lifestyles, Inc. ("Creative") is a New York corporation with its principal place of business located in New York, New York. (Compl. ¶ 16.)

13. Defendant Cottage Homecare Services, Inc, ("Cottage"), is a New York corporation with its principal place of business located in Woodbury, New York. (Compl. ¶ 17.)

14. Defendant East New York Urban Youth Corps ("Urban Youth") is a New York not-for-profit corporation is a New York not-for-profit corporation with its principal place of business located In New York, New York. (Compl. ¶ 18.)

15. Defendant East Rockaway Progressive Care Facility ("Rockaway") is operated by ERNH Corporation, Inc, a New York corporation with its principal place of business located in Lynbrook, New York. (Compl. ¶ 19.)

16. Defendant Elmhurst Care Center, Inc. ("Elmhurst") is a New York corporation with its principal place of business located in East Elmhurst, New York. (Compl. ¶ 20.)

17. Defendant the New Brighton Manor of Long Beach Home for Adults ("New Brighton") is operated by New Brighton Manor, LLC, a New York limited liability company with its principal place of business located in New York, New York. (Compl. ¶ 21.)

18. Defendant Greater New York Home Care Systems, Inc. ("Greater NY") is a New York corporation with its principal place of business located in Syosset, New York, is a duly licensed home care services agency. (Compl. ¶ 22.)

19. Defendant Highland Care Center, Inc. ("Highland") is a New York corporation with its principal place of business located In New York, New York. (Compl. ¶ 23.)

20. Defendant Hudson Valley Home Care, Inc. ("Hudson Valley") is a New York corporation with its principal place of business located in Poughkeepsie, New York. (Compl. ¶ 24.)

21. Defendant Keser Nursing & Rehabilitation Center, Inc. ("Keser") is a New York corporation with its principal place or business located in New York, New York. (Compl. ¶ 25.)

22. Defendant Logan & Logan, Inc. ("Logan") is a New York corporation with its principal place of business located in Center Moriches, New York, the assets of which have been sold to another service provider. (Compl. ¶ 26.)

23. Defendant New South Shore Manor ("South Shore") is a New York corporation with its principal place of business located in New York, New York. (Compl. ¶ 27.)

24. Defendant New York County Health Services Review Organization, Inc. ("NYCSRO") is a New York not-for-profit corporation with its principal place of business located In New York, New York. (Compl. ¶ 28.)

25. Defendant Nyack Manor Nursing Home ("Nyack") is a New York nursing home with its principal place of business located in Valley Cottage, New York. (Compl. ¶ 29.)

26. Defendant Oyster Bay Manor Senior Residence, Inc. ("Oyster Bay") is a New York corporation with its principal place of business located in Oyster Bay, New York. (Compl. ¶ 30.)

27. Defendant Personnel Management Services, Inc. ("PMSY") is a New York corporation with its principal place of business located in Brooklyn, New York. (Compl. ¶ 31.)

28.     Defendant Quality Healthcare, Inc. ("Quality") is a New York corporation with its principal place of business located in New York, New York. (Compl. ¶ 32.)

29.     Defendant Royal Health Care Services ("Royal") is a New York business entity with its principal place of business located in Rego Park, New York. (Compl. ¶ 33.)

30.     Defendant St. Michael's Home ("St. Michael's") is a New York corporation with its principal place of business located in Yonkers, New York. (Compl. ¶ 34.)

31.     Defendant The Dennelisse Corporation ("Dennelisse") is a New York corporation with its principal place of business located in New York, New York. (Compl. ¶ 35.)

32.     Defendant Patchogue Nursing Center ("Patchogue"), c/o Robert Baffa at St. James Nursing Facility, LLC, is a New York limited liability company with its principal place of business located in St. James, New York. (Compl. ¶ 36.)

33.     Defendant Unique People Services, Inc. ("Unique People") is a New York not-for-profit corporation with its principal place of business located in New York, New York. (Compl. ¶ 37.)

34.     Defendant Flushing House ("Flushing") is a New York not-for-profit corporation with its principal place or business located in Flushing, New York. (Compl. ¶ 38.)

35.     Defendant Praxis Housing Initiatives, Inc. and Praxis Housing Initiatives, Inc. d/b/a The Balfour Hotel (the "Praxis Entities") are both New York corporations with their principal places of business located in New York, New York. (Compl. ¶ 39.)

36.     Third-Party Defendant IAAC is a business corporation duly organized and existing under the laws of the State of New York. (Third-Party Compl. ¶ 4.)[4]

37.     Third-Party Defendant IIABNY is a business corporation duly organized and existing under the laws of the State of New York. (Third-Party Compl. ¶ 5.)

## II.   THE NEW YORK HEALTH CARE FACILITIES WORKERS' COMPENSATION TRUST

38.     The New York Health Care Facilities Workers' Compensation Trust (the "Trust") was a group self-insured trust program created and organized under the laws of New York, which existed from 1997 through 2006, when it terminated operations. (Compl. ¶¶ 40-41.)

39.     From 1997 to July of 2006, Hamilton Wharton provided services as the Administrator of the Trust. (Taylor Dec. ¶ 7.)

40.     The program or group administrator of a group self-insured trust is "that entity responsible for assisting the [trust] in complying with the provisions of the [Workers' Compensation Law] and the rules and regulations promulgated thereunder." (Ex. A to Smith Dec., at 16.)

41.     The group administrator of a trust is typically delegated responsibility for locating new trust members and coordinating the services that are required by the trust, but does not process claims or perform legal or actuarial services for the trust. (Taylor Dec. ¶ 7.)

42.     Hamilton Wharton was also responsible for identifying potential new members of the Trust, and in facilitating their joining the Trust. (Id. ¶ 8.)

---

[4] The Third-Party Complaint in this action is annexed as Ex. H to the Smith Dec.

7

43. The Trustees of the Trust had the final decision-making authority for the Trust. (Id.)

44. In connection with Hamilton Wharton Group's management of the trust, Taylor served as Managing Director of the Trust from the Trust's inception in May of 1997 until July of 2006, when the Trust's board of trustees voted to dissolve the Trust. (Id. ¶ 9.)

45. None of the services Taylor rendered to the Trust could have been performed by him without a New York State insurance broker's license. Indeed, the services that he provided to the Trust were those of an insurance broker and limited agent of the Trust. (Id. ¶ 10.)

III. UNDERLYING LAWSUITS

46. Various Members of the Trust have been charged special assessments by The New York State Workers' Compensation Board ("WCB") to compensate for a purported Trust deficit. (Compl. ¶ 47.)

47. On or about June 27, 2008, as a result these special assessments, Defendants Inter-Community Memorial Hospital of Newfane, Inc. and Integrated Care Systems, LLC filed a Complaint against Defendants Hamilton Wharton and Taylor, which is currently pending as Index Number 133991/2008 in the Supreme Court for the State of New York, County of Niagara (the "Niagara Action.") (Compl. ¶ 51.) On or about January 20, 2009, an Amended Verified Complaint was filed in the Niagara Action, which is annexed as Ex. D to the Taylor Dec.

48. On or about November 13, 2008, the WCB filed a suit against various Members of the Trust seeking the recovery of a purported $33.8 million Trust deficit. (Ex. E to Taylor

8

Dec.) That suit is currently pending as Index Number L-00076-08 in the State of New York Supreme Court, County of Albany. (Compl. ¶ 48.)

49. Within that same lawsuit (Index Number L-00076-08) and on or about April 30, 2009, the defendants identified in paragraphs 7 through 33 filed a Third-Party Complaint against Defendants Hamilton Wharton and Taylor, James McGarrity and Berenson & Co., LLP ("Albany Action I"). (Compl. ¶ 49; Answer ¶ 49.) On or about March 15, 2010, a First Amended Third-Party Complaint was filed in the Albany Action I, which is annexed as Ex. F to the Taylor Dec.

50. Also within that same lawsuit (Index Number L-00076-08) and on or about June 24, 2009, the Praxis Entities filed a Third-Party Complaint against Defendants Hamilton Wharton and Taylor, James McGarrity and Berenson & Co., LLP ("Albany Action II," together with Niagara Action, the "Underlying Actions.")..(Compl. ¶ 50; Answer ¶ 50.)

51. The Underlying Actions allege that the duties that Defendants were to perform for the Trust included developing marketing materials for advertisement; visiting prospective clients, selecting all service providers to the Trust, reviewing specialty vendor proposals; and performing on-site visitations of prospective new members. (Albany Compl. I ¶¶ 60, 67; Albany Compl. II ¶¶ 33, 40; Niagara Compl. ¶¶ 62, 67.)

52. The Underlying Actions further allege that in violation of both their agreement with the Trust and various regulatory requirements, the Defendants failed to hire an accountant or actuary from 1997-99. (Albany Compl. I ¶ 74; Albany Compl. II ¶ 47; Niagara Compl. ¶¶ 69(h), 175(c).) The Underlying Actions allege that due to this failure, the Trust could not determine if its loss reserves were sufficient, whether member discounts were appropriate, and

whether the Trust was underfunded. (Albany Compl. I ¶ 81; Albany Compl. II ¶ 54; Niagara Compl. ¶¶ 69(g), 86.)

53.     The Underlying Actions allege that Defendants allowed offered generous and unwarranted discounts which contributed significantly to the cumulative member deficit (Albany Compl. I ¶¶ 98-103; Albany Compl. II ¶¶ 71-76; Niagara Compl. ¶ 87); did not regularly conduct payroll audits, resulting in insufficient member contributions (Albany Compl. I ¶¶ 104-109; Albany Compl. II ¶¶ 77-82; Niagara Compl. ¶¶ 88-89); failed to design or implement safety audits (Albany Compl. I ¶¶ 110-116; Albany Compl. II ¶¶ 83-89; Niagara Compl. ¶¶ 90-91); improperly cancelled coverage of one of its members (Albany Compl. I ¶¶ 117-19; Albany Compl. II ¶¶ 90-92); backdated applications for membership in violation of the WCB's regulations (Albany Compl. I ¶ 122; Albany Compl. II ¶ 95), failed to file federal and state tax returns from 1997-2005 (Albany Compl. I ¶¶ 126, Albany Compl. II ¶ 99; Niagara Compl. ¶ 69(k)); and may have used Trust funds to pay Hamilton Wharton's legal and accounting expenses (Albany Compl. I ¶ 127; Albany Compl. II ¶ 100; Niagara Compl. ¶ 74).

54.     The Albany Complaints also allege Defendants perpetuated a fraud which prevented the Trust members from making an informed decision about their self-insurance options, the effectiveness of Hamilton Wharton as the group administrator and/or whether they should continue to remain in the Trust. The alleged fraudulent activity included:

- Misrepresenting that Defendants had experience in the administration of group self-insured trusts;
- Misrepresenting that Defendants were operating and managing the Trust in a responsible manner and in accordance with the WCL, NYCRR and governing Trust documents;
- Purposely keeping the Trust members in the dark regarding the financial condition of the Trust by failing to engage independent counsel, accountants and actuaries, failing to prepare audited financial statements and actuarial reviews in a timely manner, failing to file the appropriate reports, audited financial statements and payroll reports with the WCB;

- Failing to notify Trust members concerning material financial and other facts;
- Failing to furnish regular reports of administration to Third-Party Plaintiffs;
- Handpicking Trustees and then failing to familiarize them as to their duties and the proper discharge of same;
- Failing to hold Trustee meetings; and
- Failing to furnish regular reports of operations to Trust members, continuing to send renewals to members without advising that the rates were inadequate and falling to advise Trust Members of the deteriorating financial condition of the Trust

(Albany Compl. I ¶¶ 187-196; Albany Compl. II ¶¶ 160-170.)

55. The Niagara Complaint alleges that in failing to perform its duties as Program Administrator of the Trust, Defendants actions constituted "gross negligence and a reckless and wanton disregard for their duties." (Niagara Compl. ¶¶ 166-169.)

56. The Underlying Actions additionally allege that Defendants failed to maintain adequate reserves in order to maintain the solvency of the Trust. (Albany Compl. I ¶ 182(f); Albany Compl. II ¶ 155(f); Niagara Compl. ¶ 47.) Specifically, the allegations state that since no audited financial statements and actuarial reserves were provided until November 2000, the Trust was in a deficit position. (Albany Compl. I ¶ 130; Albany Compl. II ¶ 103; Niagara Compl. ¶ 69(g)).

57. The Underlying Actions allege that despite this deficit, Defendants continued to sign up new participants to join the Trust, did not undertake sufficient remedial measures to restore the Trust's financial stability, and continued to offer generous discounts to Trust members. (Albany Compl. I ¶¶ 134, 138, 139; Albany Compl. II ¶¶ 107, 111, 112; Niagara Compl. ¶¶ 86; 92.)

58.   The Underlying Actions allege that as a result of this mismanagement, the Trust sustained a deficit of over $30 million. (Albany Compl. I ¶ 34; Albany Compl. II ¶ 7; Niagara Compl. ¶ 47.)

## IV.   HAMILTON WHARTON'S POLICY FOR PROFESSIONAL LIABILITY COVERAGE

59.   In late 2001, when Hamilton Wharton's existing professional liability coverage was about to expire, Taylor purchased a professional liability policy from Westport. (Taylor Dec. ¶¶ 12-13.) The policy issued by Westport to Hamilton Wharton was numbered PAL101077. (Id. ¶ 13.)

60.   Hamilton Wharton has applied to Westport each year for renewal of this policy. As part of this renewal, Hamilton Wharton has completed and submitted Westport's questionnaire, entitled "Application for 'Claims Made' Insurance Policy for Insurance Agents and Brokers Professional Liability (E&O)" (the "Application"). (Id. ¶ 14.)

61.   In the application filed by Hamilton Wharton, Taylor detailed the nature of Hamilton Wharton's business and his position as the Managing Director of Hamilton Wharton. (Id. ¶ 15.)

62.   In 2001, Hamilton Wharton's Application included supplemental information stating that "Hamilton Wharton's involvement with self-insured trusts was as "program administrator for the New York Health Care Facilities Workers' Compensation Trust." (Id. ¶ 16, see id. at Ex. A at Supplemental Answer to Question 15c.)

63.   As part of the Application, Defendants additionally provided Westport with promotional advertisements stating "The Hamilton Wharton Group, Inc. is the Program

Administrator for The New York Health Care Facilities Workers' Compensation Trust." (Id. ¶ 17, see id. at Ex. A.)

64.     On February 22, 2006, Taylor purchased a renewal of Hamilton Wharton's Insurance Industry Professional Liability coverage for the period from March 31, 2006 to March 31, 2007. This policy was numbered WED4NY006226900 (the "Policy"). (Id. ¶ 18.)

65.     The Policy has limits of liability of $5,000,000 per claim and $10,000,000 in the aggregate subject to a $10,000 deductible per claim. (Compl. ¶ 56.)

66.     The Policy provided that Plaintiff would "pay on behalf of any insured 'loss' in excess of the Deductible for which the insured is legally liable caused by a 'wrongful act' committed by an insured arising out of or in connection with the conduct of the insured's 'professional services' for others." (Compl. ¶ 57.)

67.     Each of the above terms in quotations is defined in the Definitions section of the Policy as follows:

> LOSS. "Loss" means amounts payable by an insured in settlement of "claims" or in satisfaction of judgments, awards, or settlements, if covered by this "coverage unit," provided always that "loss" shall not include:
> 1. "Claim expense"; or
> 2. Punitive or exemplary damages, except where permitted by law; or
> 3. Civil or criminal sanctions, fees, fines, or penalties imposed on any insured; or
> 4. The amount of any multiplied damage awarded that is in excess of the damage award so multiplied; or
> 5. The return by any insured of any fees or remuneration paid to any insured; or
> 6. Liquidated damages as provided under a contract or statute; or
> 7. Matters deemed uninsurable.
>
> WRONGFUL ACTS. "Wrongful act" or "wrongful acts" means any negligent act, error, omission, or "personal injury" of an insured or any person for whose acts the insured is legally liable in rendering "professional services" for others.

> PROFESSIONAL SERVICES. "Professional services" means the insureds activities for others as a managing general insurance agent, general insurance agent, insurance agent, or insurance broker.

(Compl. ¶ 58.)

68. The General Terms & Conditions of the Policy also contains an exclusion (the "Insolvency Exclusion"), added by Endorsement, that excludes coverage for any claim based upon, arising out of, attributable to, or directly or indirectly resulting from insolvency:

> INSOLVENCY. The financial Inability to pay, insolvency, receivership, bankruptcy or liquidation of any insurance company, any Individual Practice Association, Health Maintenance Organization) Preferred Provider Organization, Dental Service Plan, Risk Retention Group, Risk Provider Group) self-insured plan or any pool) syndicate, association, or other combination formed for the purpose of providing insurance or reinsurance, or any healthcare provider or any reinsurer with which the insured directly placed the subject risk; however, this exclusion does not apply if, at the time the insurer placed the subject risk with any of the above-described entities, such entity or entities were rated by AM Best as B+ or higher, or alternatively, such entities were guaranteed by a governmental body or bodies and/or operated by a governmental body or bodies (including but not limited to assigned risk plans, Joint Underwriting Association's, fair plans) or the insured placed the coverage with a County Mutual reinsured by carriers rated B+ or higher.

(Compl. ¶ 60.)

69. The Insurance Industry Professional Liability Coverage Unit of the Policy also contains the following Exclusions:

> In addition to those exclusions in the GENERAL TERMS AND CONDITIONS, this "coverage unit" shall not apply to any "claim" based upon, arising out of, attributable to, or directly or indirectly resulting from:
>
> E. INTENTIONAL ACTS. As respects this "coverage unit" the Intentional Acts Exclusion in the GENERAL TERMS AND CONDITIONS is amended for this "coverage unit" to the following:
>
> INTENTIONAL ACTS. Any "claim [sic] for intentional acts, including but not limited to acts of dishonesty, fraud, criminal conduct, malice, assault or battery. However, this exclusion does not apply to those insureds described in the section, Who Is An Insured, paragraphs A,B,C,D, or E of this "coverage unit" who do not

personally participate in or ratify the acts identified above and who notify us once such act has been discovered.

G. THIRD PARTY ADMINISTRATOR. Any insureds activities as a third party administrator, whether the insured performs such activities for a fee or no fee.

(Compl. ¶ 61.)

V.   THE CURRENT ACTION FOR DECLARATORY RELIEF

70.   On August 23, 2006, after a meeting with the WCB and members of the Trust, Taylor informed his insurance broker, IIABNY, of a potential claim involving Hamilton Wharton's administration of the Trust. (Taylor Dec. ¶ 19.)

71.   Swiss Re, Westport's parent company, acknowledged the receipt of this claim via a letter sent to Taylor on September 15, 2006. (See Ex. C to Taylor Dec.)

72.   By letter dated January 15, 2009, Westport informed Taylor that while it reserved its rights, it would provide Defendants a defense to the Niagara Action. (See Ex. H to Taylor Dec.) Westport additionally agreed to provide Defendants with defenses to the Albany Actions. (See Ex. I to Taylor Dec.)

73.   On March 5, 2010, Westport informed Taylor that while "Westport will continue to provide a defense" to the Underlying Actions, "Westport [] expressly reserves its right to withdraw the defense provided . . . ." Westport further informed Taylor that it reserved the right "to file a declaratory judgment action and to recoup defense costs incurred . . . upon a finding of no duty to defend." (Id.)

74.   On March 10, 2010, over a year and a half after the first complaint was filed against Hamilton Wharton and Taylor, Westport filed this action for declaratory relief claiming it was not required to indemnify Hamilton Wharton under the Policy. (Taylor Dec. ¶ 28.)

15

75. Westport initiated the action "seeking judicial determinations that it has neither a duty to defend nor to indemnify Hamilton Wharton for any judgments entered against it in connection" with the Albany and Niagara Actions. (Letter from Joyce F. Noyes to the Honorable Richard M. Berman, September 1, 2010, annexed as Ex. D to the Declaration of Kevin L. Smith ("Smith Dec."), dated Oct. 29, 2010.)

76. Westport asserts the allegations in the Underlying Complaints do not trigger the Policy's insuring agreement as Defendants' services to the Trust fall outside the scope of the Policy, and fall within certain exceptions. Specifically, Westport alleges that Defendants services (1) do not constitute "Professional Services" as defined by the Policy (Compl. ¶¶ 65-69); (2) fall under Exclusion E of the Policy, in that they were intentionally wrongful and fraudulent acts (Compl. ¶¶ 70-74); and (3) fall under the Insolvency Exclusion of the Policy (Compl. ¶¶ 79-83). Westport also asserts that Defendants were acting as third-party administrators, and therefore coverage does not attach under Exclusion G of the Policy. (Compl. ¶¶ 75-78.)

77. In the Underlying actions, Defendants deny (i) that they committed a fraud; (ii) that they acted as a third-party administrator (as opposed to a program administrator); and (iii) that they caused the insolvency of the Trusts. (Memorandum of Law in Support of Motion to Dismiss Albany I Complaint,[5] at 11, 15, 21; Affirmation in Support of Third-Party Defendants

---

[5] Annexed as Exhibit E to the Smith Dec.

Motion to Dismiss of the Albany II Complaint[6] ¶¶ 20-23, 27; Answer to Amended Verified Complaint With Cross-Claims in the Niagara Action[7] ¶¶ 20, 29, 53.)

78.    On August 17, 2010, Defendants filed a Third-Party Complaint against IAAC, Inc. and Independent Insurance Agents & Brokers of New York, Inc.  (Ex. H to Smith Dec.)

---

[6] Annexed as Exhibit F to the Smith Dec.

[7] Annexed as Exhibit G to the Smith Dec.

Dated: New York, New York
October 29, 2010

                                  Respectfully submitted,
                                  STROOCK & STROOCK & LAVAN LLP

                                  By:   /s/
                                        Kevin L. Smith
                                        Jeremy S. Rosof
                                        Derek I.A. Silverman
                                  *Attorneys for Defendants The Hamilton Wharton*
                                  *Group, Inc. and Walter B. Taylor, individually*
                                  180 Maiden Lane
                                  New York, New York 10038
                                  (212) 806-5400


                                  ZDARSKY SAWICKI & AGOSTINELLI LLP

                                  By:   /s/
                                        Joseph E. Zdarsky
                                        David E. Gutowski
                                  *Attorneys for Defendants Inter-Community*
                                  *Memorial Hospital of Newfane, Inc. n/k/a*
                                  *Eastern Niagara Hospital, Inc. and Integrated*
                                  *Care Systems, LLC*
                                  404 Cathedral Place
                                  298 Main St., Ste. 404
                                  Buffalo, New York 14202
                                  (716) 855-3200


                                  SHAUB, AHMUTY, CITRIN & SPRATT LLP

                                  By:   /s/
                                        Steven J. Ahmuty, Jr.
                                        Timothy R. Capowski
                                        Gerard S. Rath
                                  *Attorneys for the Healthcare Facilities*
                                  *Defendants*
                                  1983 Marcus Avenue
                                  Lake Success, New York 11042
                                  (516) 488-3300