UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION<br><br>Plaintiff,<br><br>-against-<br><br>THE HAMILTON WHARTON GROUP, INC., WALTER B. TAYLOR, individually,<br><br>and<br><br>INTER-COMMUNITY MEMORIAL HOSPITAL OF NEWFANE, INC., et al.<br><br>Defendants. | CASE NO. CV 10 2188 (RMB) (THK) |
| THE HAMILTON WHARTON GROUP, INC. and WALTER B. TAYLOR, individually,<br><br>Third Party- Plaintiffs,<br><br>-against-<br><br>IAAC, INC. and INDEPENDENT INSURANCE AGENTS & BROKERS OF NEW YORK, INC.,<br><br>Third-Party Defendants. | December 17, 2010 |

**THIRD-PARTY DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS**

*Of Counsel:*
Robert J. Grande, Esq. (RG6958)
Darren P. Renner, Esq. (DR9237)

KEIDEL, WELDON & CUNNINGHAM, LLP
*Attorneys for the Third-Party Defendants*
*IAAC, INC. and INDEPENDENT*
*INSURANCE AGENTS AND BROKERS OF*
*NEW YORK, INC.*
925 Westchester Avenue, Suite 400
White Plains, New York 10604
Tel: 914-948-7000

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION ........................................................................................... | 1 |
| II. | ARGUMENT .................................................................................................. | 1 |
| | A.  The Court Lacks Subject Matter Jurisdiction ................................... | 1 |
| | B.  Statute of Limitations ........................................................................ | 4 |
| | C.  Duty of Insurance Agent and Broker / Duty to Read Policy ............. | 7 |
| III. | CONCLUSION ............................................................................................... | 9 |

I.  **INTRODUCTION**

Third-Party Defendants IAAC, Inc. ("IAAC") and Independent Insurance Agents & Brokers of New York, Inc. ("IIABNY") hereby submit this reply brief in further support of its motion to dismiss the Third-Party Complaint filed by The Hamilton Wharton Group, Inc. ("HWG") and Walter B. Taylor ("Taylor") against them. The Court lacks subject matter jurisdiction over this matter due to the absence of a ripe claim against IAAC and IIABNY. HWG and Taylor's response seek to improperly change our challenge to ripeness into a mere Rule 14 objection. In addition, the pleadings make clear that the claims against IAAC and IIABNY are barred by the applicable statute of limitations. HWG's arguments in support of a later accrual of the statute of limitations act against the weight of reasoned authority in New York and favor application of New York law that is contrary to the Court of Appeal's stated policies regarding claims against insurance agents and brokers. Finally, IAAC and IIABNY owed no continuing duty to advise, guide or direct the third-party plaintiffs relative to coverage, but merely had an obligation to obtain the coverage specifically requested. If there was an issue with coverage, it would be expected that they would be able to read their policy and evaluate the relevant coverage. HWG and Taylor's arguments in opposition cite the wrong standard, do not establish an "explicit request for specific coverage" and, therefore, should be rejected.

II. **ARGUMENT**

  A.  **The Court Lacks Subject Matter Jurisdiction**

In response to IAAC and IIABNY's arguments related to a lack of subject matter jurisdiction, HWG and Taylor do not attempt to distinguish the decision from the federal court for Eastern District of Washington in <u>Wausau Underwriters Ins. Co. v. Continental Cas. Co.</u>, District Court, No. CV-07-0056-EFS, 2008 WL 793618 (E.D. Wash. March 24, 2008) in any

1

manner. Indeed, the case speaks for itself and it is directly on point. Rather, HWG and Taylor ignore the arguments related to ripeness and Federal Rule of Civil Procedure 12(b)(1) in their entirety. Instead, HWG and Taylor seem to believe that Federal Rule of Civil Procedure 14 is the sole basis for the relevant challenge, and cites to a series of cases that are distinguishable from the instant situation.

Remarkably, in opposing this motion, HWG and Taylor rely upon the very same rule that they did not follow in seeking to implead IAAC and IIABNY into this action. HWG and Taylor filed their original answer on May 27, 2010. Apparently, HWG and Taylor had a deadline to implead parties into this case by August 27, 2010, and filed their impleader on that exact date. Yet, rather than seek leave to bring the instant third-party action with the Court, as required by Fed. R. Civ. P. 14, they waited until approximately two months before the discovery deadline of November 1, 2010 to serve this third-party complaint without leave of court. On that basis alone the instant third-party action should be dismissed. See generally, Old Republic Ins. Co. v. Concast, 99 F.R.D. 566 (S.D.N.Y. 1983) (noting District Court has considerable discretion in striking a third-party complaint).

Regardless, even if the Court elects to consider HWG and Taylor's arguments, HWG and Taylor have still failed to sustain their burden in establishing subject matter jurisdiction over the third-party action. Initially, HWG and Taylor cite to Hartford Casualty Ins. Co. v. Moore, No. 08-CV-1350, 2010 WL 323502 (C.D. Ill. Jan. 20, 2010) claiming it lends support to the proposition that the damages claimed against an insurance agent or broker in a third-party action within a declaratory judgment action are not contingent or speculative. However, unlike the instant controversy, it appears that there were damages sustained by the insured/third-party plaintiff in Hartford Casualty. Specifically, the insurer/plaintiff denied a defense to the third-

2

party plaintiffs. Id. at *1. Furthermore, under Illinois law, it is questionable whether attorneys fees in defending a declaratory judgment action are recoverable if the third-party plaintiffs prevailed. See International Ins. Co. v. City of Chicago Heights, 268 Ill. App. 3d 289, 301-02 (1994). As such, there was a ripeness question that was very different from the one at issue here.

HWG and Taylor further cite two Southern District of New York cases. See Old Republic Ins. Co. v. Concast, Inc., 99 F.R.D. 566 (S.D.N.Y. 1983) and Affiliated FM Ins. Co. v. Jou Jou Designs, Inc., No. 90 Civ. 8262 (MJL), 1993 WL 427406 (S.D.N.Y. Oct. 15, 1993). The issue of ripeness was never raised in either of these cases. Instead, the Court simply considered whether there was a proper basis for a Rule 14 impleader and, in Affiliated FM, whether there existed a statutory basis for subject matter jurisdiction. Neither of these cases provides a basis for concluding that the third-party action is ripe. Indeed, there is no evidence that either Court considered the issue.

Furthermore, unlike this case where there would be absolutely no liability whatsoever by the third-party defendants to the third-party plaintiffs if the defendant prevailed in the Old Republic declaratory judgment action, the District Court noted in Old Republic that the third-party defendants might still have liability to the third-party plaintiffs regardless of the determination of the primary action. See 99 F.R.D. at 569 ("On the other hand, if Old Republic is unsuccessful in its suit against defendants, third-party defendant will avoid most of its potential liability to them.") (Emphasis added.)

The Old Republic and the Affiliated FM cases should be read for their limited holding that third-party claims are not *per se* barred. Indeed, it was argued in both cases that the third-party plaintiffs sought to recover their own damages, not to simply pass on damages from the underlying action as an impleader is normally reserved to address. IAAC and IIABNY do not

3

make this claim. In fact, IAAC and IIABNY take no position of whether the Court has supplemental jurisdiction over the third-party claims pursuant to 28 U.S.C. §1367. However, the third-party action is conjectural and hypothetical because the Court cannot award any possible damages to HWG and Taylor at this time. Rather, HWG and Taylor enjoy the benefits of the coverage that IAAC and IIABNY helped them procure; have not suffered any damages as a result of the declaratory judgment action and continue to have a defense to the underlying claims. Accordingly, the third-party claims are not ripe.

### B. Statute of Limitations

Even if the Court concludes that it has subject matter jurisdiction, the third-party complaint still must be dismissed because the alleged claims of negligence are barred by the applicable statute of limitations. Nothing set forth in the various arguments of HWG and Taylor changes this result. HWG and Taylor rely primarily on Kurt Wayne, Inc. v. Lead Underwriters at Lloyds London and Subscribers Under Policy Number WSO3133OX, 14 Misc.3d 614 (N.Y. County Sup. Ct. 2006). However, this state court case is distinguishable for multiple reasons. In particular, it presents a unique factual situation involving Underwriters at Lloyd's of London that does not exist here.

According to the Lloyd's of London website, "Lloyd's is the world's best known - but probably least understood - insurance brand. This is because Lloyd's is not an insurance company but a society of members, both corporate and individual, who underwrite in syndicates on whose behalf professional underwriters accept risk. Supporting capital is provided by investment institutions, specialist investors, international insurance companies and individuals." See http://www.lloyds.com/Lloyds/About-Lloyds/What-is-Lloyds/The-Lloyds-Market. The process for obtaining coverage through Lloyd's was explained in Kurt Wayne. Briefly, a broker

4

must obtain specific information regarding precisely what is to be insured. 14 Misc.3d at 617. Thereafter, the broker puts together a proposal to be sent to a London broker. The London broker then seeks to obtain coverage from any number of the independent underwriters for the coverage. Id. at 618. Then, a confirmation of coverage is sent from the London broker to verify that the policy provisions accurately reflect the proposal. Id.

In Kurt Wayne, plaintiff obtained jewelers block coverage after an annual underwriting process at Lloyd's for each year from 1999 to 2004. 14 Misc.3d at 617. As one might expect in this unique type of underwriting process, Jewelers block policies contain standard coverage forms as well as individualized provisions tailored to the specific coverage needs of each insured. Id. The coverage did not constitute a renewal, but different policies that varied from year-to-year with different syndicates of underwriters subscribing to each policy, cover notes and different coverage provisions. Id. at 617-18. Thus, HWG and Taylor's efforts to draw a parallel between the acknowledged renewals offered by Westport since 2001 and the underwriting of a specific risk with the Underwriters at Lloyd's London is dubious. See Third-Party Complaint, ¶ 19.

The remaining cases cited by HWG and Taylor are conclusory and are easily distinguishable. In Vic Char Realty, Inc. v. Alliance Plus, Inc., 26 A.D.3d 278, 279 (1st Dep't 2006), the Court held that a breach of contract accrued when the brokerage undertook to value plaintiff's property for purposes of obtaining replacement cost insurance. Contrary to HWG and Taylor's claim, there is no evidence in the decision that the same error was made in procuring "the original policy." Memorandum of Law in Opposition to Third-Party Defendants' Motion to Dismiss the Third-Party Complaint, December 3, 2010, p. 7. Instead, all we know from the Vic Char decision is that the broker sought to use a valuation used for "different coverage procured

by it for plaintiff." 26 A.D.3d at 279. Accordingly, the prior insurance policy or coverage may have calculated valuations differently from the policy in effect at the time of loss, or the coverage may have been obtained from a different carrier. HWG and Taylor can only speculate as to the prior policy and, therefore, insinuate the case says something that it does not.

Regardless, it remains clear that the Vic Char has not had a substantial impact on New York law. Of the three cases that have cited to Vic Char, two of those decisions were cited in HWG and Taylor's brief. See Kurt Wayne, 14 Misc.3d at 618; Tucker v. M & T Ins. Agency, Inc., 35 A.D.3d 1156 (4th Dep't 2006).[1] Two of the three decisions placed importance on the fact that another carrier insured the policyholder prior to the policy at issue at the time of the loss. See Neary v. Tower Ins., 32 A.D.3d 920 (2d Dep't 2006); Kurt Wayne, 14 Misc.3d at 618 (noting different syndicates covered plaintiff). In Tucker, 35 A.D.3d at 1156, also cited in Vic Char, the Court specifically noted that there were not only "further discussions" with the broker, but also alleged independent acts of malpractice after renewal that supported a later accrual. The independent acts that were alleged are unclear from the decision.

Here, there are no allegations of any subsequent conduct that would have supported a negligence or breach of contract claim. Rather, while plaintiff had alleged that the policy was renewed from year to year, the only alleged conduct forming the basis of this action against IAAC and IIABNY was the decision to place the policy with Westport in 2001, more than six years prior to the commencement of this action.

Ultimately, HWG and Taylor attempt to distort New York case law to, in essence, argue that the mere existence of a continuous insured-broker relationship will toll the statute of limitations. However, insurance brokers are not considered "professionals" for statute of

---

[1] The other case is Neary v. Tower Ins., 32 A.D.3d 920 (2d Dep't 2006) discussed herein.

limitations purposes, and therefore, the doctrine is inapplicable to them. See Pike v. New York Life Ins. Co., 72 A.D.3d 1043, 901 N.Y.S.2d 76, 81 (2d Dep't 2010) (citing Chase Scientific Research v. NIA Group, 96 N.Y.2d 20, 30 (2001)). Indeed, insurance agents and brokers have no continuing duty to advise, guide and direct their customers with respect to coverage. Murphy v. Kuhn, 90 N.Y.2d 266, 270 (1997). As such, the continuous wrong doctrine is also not applicable to claims against IAAC and IIABNY to toll the statute of limitations.[2]

HWG and Taylor complain that the cases cited by IAAC and IIABNY do not directly involve renewals of policies. This position is absurd. HWG and Taylor's own cases are cited to establish an exception to the general rule that renewals of insurance policies do not create a new accrual date for the statute of limitations. Regardless, in Crimaudo v. Allstate Insurance, Supreme Court, Index No. 013759/05, 2008 WL 1771796 (Nassau Co. April 4, 2008)[3], the Supreme Court held that mere renewal of the subject policy year after year without objection is insufficient to constitute an intervening act to make the accrual date later. Therefore, these complaints by HWG and Taylor about IAAC and IIABNY's case law are meritless, and the motion to dismiss should be granted.

### C.   Duty of Insurance Agent and Broker / Duty to Read Policy

Finally, HWG and Taylor contend that they had no duty to read the relevant policy despite the fact that they claim to be insurance agents or brokers themselves, citing to Reilly v. Progressive Ins. Co., 288 A.D.2d 365, 366 (2d Dep't 2001). Strangely, HWG and Taylor make

---

[2] Regardless, even if renewal extended the accrual date, the negligence cause of action cannot survive. The specific renewal policy that forms the basis of the declaratory judgment action was issued by Westport on March 31, 2006. Westport's Complaint, ¶ 1. Therefore, if each renewal could constitute a separate overt act, the negligence cause of action would remain untimely because HWG would have been required to commence the instant action no later than March 31, 2009. Thus, even under HWG and Taylor's best case scenario, the negligence count must be dismissed.

[3] A copy of the Crimaudo case is attached.

7

undisputed, conclusory arguments related to the general ability to state a claim for breach of contract or negligence against a broker, but reserve their only substantive arguments on this issue to footnote five. Specifically, HWG and Taylor claim that that when an "explicit" request for coverage is made, referencing 10 paragraphs of the third-party complaint (¶ ¶ 26-27, 33-40), a valid cause of action exists. However, this is not the standard of the New York Court of Appeals, which requires a "specific" request.[4]

A review of the allegations of the third-party complaint shows that these are nothing more than general requests for insurance. A general request for coverage made by an insured-client and conveyed to its insurance agent or broker will not satisfy the requirement of a specific request for a certain type of coverage and will not trigger an insurance broker's duty to advise and/or recommend additional or different insurance coverage. See Hoffend & Sons, Inc., 7 N.Y.3d 152, 158 (2006); Murphy v. Kuhn, 90 N.Y.2d 266, 272-73 (1997).

"Insurance agents or brokers are not personal financial counselors and risk managers, approaching guarantor status." Id. at 273. Certainly, there are some exceptions to the duty to read as explained on page 33 of the initial memorandum of law. However, even if the Court were inclined to follow Reilly, no specific request for coverage actually exists here. Therefore, the motion to dismiss should be granted since the duty to read is applicable and no specific request for coverage was made.

In the end, HWG and Taylor's arguments seek to extend New York law beyond the parameters contemplated by the New York Court of Appeals. "[I]t has been observed that

---

[4] In Reilly, the court noted an "explicit request for specific coverage" and "an explicit request for a specific amount of coverage." 288 A.D.2d at 266. In that matter, plaintiff requested a stated value policy to insure his Porsche for $40,000. The broker failed to obtain that coverage. Clearly, the facts of this case are much different from the issues addressed in Reilly as there are only claims of a general request for E & O coverage.

[u]nlike a recipient of the services of a doctor, attorney or architect ... the recipient of the services of an insurance broker is not at a substantial disadvantage to question the actions of the provider of services." (Internal quotation marks omitted.) Murphy, 90 N.Y.2d at 273. The Court also expressed concern that by "permitting insureds to add such parties to the liability chain might well open flood gates to even more complicated and undesirable litigation." Id.

Since HWG and Taylor necessarily argue that they are insurance agents and brokers themselves, it is outrageous to contend that they did not have a duty to read the policies they now complain about, or that the New York Court of Appeals would open the "flood gates" of potential litigation to allow stale claims that accrued approximately nine years ago. Therefore, the motion to dismiss should be granted.

## III.  CONCLUSION

WHEREFORE, IIAC and IIABNY respectfully request that the Court grant this motion to dismiss in its entirety, and grant IAAC and IIABNY such other further relief as the Court deems just and equitable.

Respectfully Submitted,

/S/
Robert J. Grande, Esq. (RG6958)
Darren P. Renner, Esq. (DR9237)

Keidel, Weldon & Cunningham, LLP
*Attorneys for the Third-Party Defendants
IAAC, INC. and INDEPENDENT INSURANCE
AGENTS AND BROKERS OF NEW YORK, INC.*
925 Westchester Avenue, Suite 400
White Plains, New York 10604
Tel: 914-948-7000
Fax: 914-948-7010
rgrande@kwcllp.com
drenner@kwcllp.com

SHORT FORM ORDER

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

Present:

    HON. DANIEL PALMIERI
    Acting Justice Supreme Court

------------------------------------------------------------x    TRIAL TERM PART: 48

SALVATORE CRIMAUDO and LAURIE
CRIMAUDO,

                                         INDEX NO.:013759/05

                             Plaintiff,

                                       MOTION DATE:1-11-08
        -against-                    SUBMIT DATE:3-6-08
                                       SEQ. NUMBER - 001
                                                 & 002

ALLSTATE INSURANCE and BEVAL
AGENCY INC.,

                             Defendants.
------------------------------------------------------------x

The following papers have been read on this motion:

    Notice of Motion, dated 12-12-07............................................ 1
    Memorandum of Law in Support, undated............................ 2
    Notice of Cross Motion, dated 12-31-07.................................. 3
    Affirmation in Opposition, dated 2-22-08............................... 4
    Affirmation in Opposition, dated 2-22-08............................... 5
    Reply Affirmation, dated 3-3-08............................................... 6
    Reply Affirmation, dated 3-4-08............................................... 7

The motion by the defendant Beval Agency, Inc. ("Beval") for summary judgment pursuant to CPLR 3212 is granted. The motion by defendant Allstate Insurance ("Allstate") (improperly designated as a cross motion) for summary judgment pursuant to CPLR 3212 is granted. The complaint is dismissed in its entirety.

This case concerns the alleged wrongful acts and omissions of an insurance agency and an insurer in failing to provide the plaintiffs with a policy that would have covered the full replacement value of their mobile home, destroyed in a flood in April of 2005.

In 1998 the plaintiffs purchased a 1999 model Breckenridge Park Model RV ("Breckenridge"), which is a small mobile residence of some 400 square feet. Despite the "RV" noted at the end of the model name, the home is not self-propelled, but is instead mounted on wheels and must be towed to its location; the advertising brochure for the product refers to it not as a vehicle but as a "Park Model Home." The plaintiffs initially had insurance covering the Breckenridge through Foremost Insurance Company, but on May 21, 1999 Salvatore Crimaudo approached one RoseAnn Cestaro, an employee of defendant Beval, an exclusive agent for Allstate, regarding a new policy. The plaintiffs already had several other insurance policies from Allstate, all obtained through Beval.

According to the deposition testimony and affidavit from Cestaro, he asked her if she could better the price of the coverage afforded by the Foremost policy, and presented the declarations pages for the latter. It contained coverages for, among other things, the dwelling, personal property and personal liability. There was no mention of flood coverage. After speaking with Cestaro, Mr. Cimaudo applied for an Allstate policy on that the date indicated

As a result of this inquiry and application, plaintiffs were issued an Allstate policy covering the Breckenridge. The complaint alleges that is was issued effective June 19, 1999.

2

The defendants have not provided the Court with the initial policy, but rather the one that was in effect at the time of the loss, claimed to have been a renewal of the same coverages purchased in 1999. It is entitled "Allstate Deluxe Mobilehome Policy" and did not provide coverage for floods. The complaint alleges that on April 3, 2005 the Breckenridge "was destroyed and totaled by a flood." When the plaintiffs made a claim under the policy, they were told that there was no coverage for flood damage, and that there was no replacement cost coverage.

However, after plaintiffs became upset at this news Cestaro contacted Allstate, and was able to have their existing Allstate automobile policy amended to add the Breckenridge as a trailer. This provided them with coverage for flood losses under their automobile comprehensive coverage. Allstate thus paid the plaintiffs $19,914 for damage to the mobile home, but plaintiffs assert that this fell short of covering their full loss, which was as noted is claimed to be total. The difference is stated to be $55,000. This action was commenced by the filing of a summons and complaint on August 29, 2005.

The complaint sets out four causes of action, without differentiating between defendants. The first sounds in negligence, the second in breach of contract, the third for reformation of contract, and the fourth for a declaratory judgment. An allegation of fraud is also made in the third claim. Beval served an answer asserting, *inter alia,* the affirmative defenses of the statute of limitations and its role as a disclosed agent of Allstate. Allstate also answered, denying the material allegations of the complaint and asserting that the

3

complaint failed to state a cause of action as against it. Both defendants now separately move for summary judgment.

Generally speaking, to obtain summary judgment it is necessary that the movant establish its claim or defense by the tender of evidentiary proof in admissible form sufficient to warrant the court, as a matter of law, in directing judgment in its favor (CPLR 3212 [b]), which may include deposition transcripts and other proof annexed to an attorney's affirmation. *Olan v Farrell Lines*, 64 NY2d 1092 (1985). Absent a sufficient showing, the court should deny the motion, irrespective of the strength of the opposing papers. *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 (1985).

If a sufficient *prima facie* showing is made, however, the burden then shifts to the non-moving party. To defeat the motion for summary judgment the opposing party must come forward with evidence to demonstrate the existence of a material issue of fact requiring a trial. CPLR 3212 (b); *see also GTF Marketing, Inc. v. Colonial Aluminum Sales, Inc.*, 66 NY2d 965 (1985); *Zuckerman v. City of New York*, 49 NY2d 557 (1980). The non-moving party must lay bare all of the facts at its disposal regarding the issues raised in the motion. *Mgrditchian v. Donato*, 141 AD2d 513 (2d Dept. 1988). Conclusory allegations are insufficient (*Zuckerman v. City of New York, supra*), and the defending party must do more than merely parrot the language of the complaint or bill of particulars. There must be evidentiary proof in support of the allegations. *Fleet Credit Corp. v. Harvey Hutter & Co., Inc.*, 207 A.D.2d 380 (2d Dept. 1994); *Toth v. Carver Street Associates*, 191 AD2d 631 (2d Dept. 1993). Nevertheless, the court must draw all reasonable inferences in favor of the

nonmoving party. *Nicklas v Tedlen Realty Corp.*, 305 AD2d 385 (2d Dept. 2003); *Rizzo v. Lincoln Diner Corp.*, 215 AD2d 546 (2d Dept. 1995).

Under these well-established standards it is apparent that Beval has made out a *prima facie* showing that this action is time-barred, and the plaintiffs have failed to raise any issue of fact with regard to the same. The policy at issue was procured and issued through its efforts on June 19, 1999. Whether posited as negligence (three years), or breach or reformation of contract (six years), this is when the cause of action accrued, as the alleged omission to provide the full replacement coverage the plaintiffs claim they wanted occurred at this time. CPLR 213, 214; *see, Neary v Tower Ins.*, 32 AD3d 920 (2d Dept. 2006); *St. George Hotel Assocs. v Shurkin*, 12 AD3d 359 (2d Dept. 2004). This action was commenced more than six years thereafter. Further, courts look to the underlying claim to determine when a cause of action for declaratory judgment accrues (*McCarthy v Zoning Bd. of Appeals of Town of Niskayuna*, 283 AD2d 857 [3d Dept. 2001]), and thus this claim is time-barred as well. As the allegedly offending policy was simply renewed year after year without objection until the subject loss, the plaintiffs have been unable to show that there were any additional intervening acts by Beval such that the claim can be said to have accrued any later. *Cf., Tucker v M & T Ins. Agency*, 35 AD3d 1156 (4th Dept. 2006).

The Court also cannot agree with plaintiffs that any cause of action for fraud lies, but even if it did, it too would be time barred. It has a six-year limitations period, and resort to so much of the statute that can extend that period for two years fails in that such additional

5

period runs the point in time from the plaintiff's discovery of the fraud "or could with reasonable diligence have discovered it." CPLR 213(8). Inasmuch as the plaintiffs had the "wrong" policy in their possession in 1999, the alleged fraud could have been discovered at that time. Finally, the Court cannot agree with plaintiffs that the later alteration to their automobile policy to provide them with some coverage for their loss constitutes a ground for invoking equitable estoppel. Their contention that this act was done to cover up defendants' errors and to forestall this action for the entire replacement value of the mobile home is based on no more than sheer speculation.

Moreover, even if the action were timely, it would still have to be dismissed on the merits. An insurance agent such as Beval may be held liable for its own act of negligence in failing to procure insurance. *Katz v Tower Ins. Co. of New York*, 34 AD3d 482 (2d Dept. 2006). However, this defendant has demonstrated by way of affidavit and other proof that the policy it procured was at plaintiffs' request to replace the coverages of the Foremost policy, but at lower cost. Neither Salvatore Crimaudo's deposition testimony, nor the affidavits he has submitted in opposition to the present motions, has flatly contradicted this assertion such that this basic instruction by the plaintiffs has been placed in issue.

In that regard, and as noted above, Foremost's declarations page makes no mention of flood coverage, and a flood is what caused the subject loss. The plaintiffs have not demonstrated that the Foremost policy replaced by Beval and Allstate had such coverage, nor have they presented admissible proof that they specifically asked for flood coverage from Allstate. Indeed, in their responsive papers their attorney states that "the proper insurance

6

policy [now] has been provided along with the requisite flood insurance" (LoPresti Aff., ¶ 12), but the new Foremost policy they present intended to cover another mobile home purchased after the loss of the Breckenridge states that "Your mobile home policy does <u>NOT</u> provide coverage from loss caused by flood..." (Emphasis in original.) Separate flood insurance was apparently obtained through the National Flood Insurance Program, which policy is annexed to plaintiffs' papers. Absent coverage for a flood, there would have been no contractual obligation on either Foremost's or Allstate's part to pay for a loss caused thereby – whether that payment be partial or for the full replacement value of the mobile home. Therefore, in this critical area Beval has demonstrated that the Allstate policy did not fail to cover a loss that the Foremost policy would have, for the simple reason that neither covered damages caused by a flood. In short, Beval has demonstrated that it did not procure a policy with lesser coverage for this particular loss. The plaintiffs have not presented admissible proof placing this in issue.

Further, Beval has established that the Allstate policy that was issued to the plaintiffs was in their possession since 1999 and was renewed multiple times, all the while containing the lesser coverages now complained of. There is no deceit or overbearing conduct apparent on Beval's part that would relieve the plaintiffs of their own duty to have read the Allstate policy, and if they did not they are not relieved from its terms simply from ignorance or "inexucusable trustfulness." *Metzger v Aetna Ins. Co.*, 227 NY 411, 415-416 (1920); *see also, Choung v Allstate Ins. Co.*, 283 AD2d 468 (2d Dept. 2001). This constitutes a separate reason for judgment in Beval's favor. Finally, the fact that one of Allstate's employees

referred to Beval's handling of the policy as being erroneous, stressed by plaintiffs, does not change any of the foregoing. Nor does Beval's later acts, in concert with Allstate, of altering another policy held by the plaintiffs to provide some coverage for the loss.

Allstate waived the statute of limitations defense by not asserting it by way of answer or motion to dismiss. CPLR 3211(e). It is potentially liable for Beval's acts as its principal. *Neil Plumbing & Heating Constr. Corp. v Providence Washington Ins. Co.*, 125 AD2d 295 (2d Dept. 1986). However, this rule of vicarious liability also affords Allstate the same defenses available to Beval (*see, e.g., Ruane v Cooper*, 127 AD2d 524 [1st Dept. 1987]), especially where, as here, the complaint does not assert separate causes of actions against each based upon separate theories of liability. Summary judgment in favor of Allstate on the merits is thus granted for the reasons stated above.

This shall constitute the Decision and Order of this Court

DATED: April 4, 2008

ENTER

_____
HON. DANIEL PALMIERI
Acting Supreme Court Justice

ENTERED
APR 09 2008
NASSAU COUNTY
COUNTY CLERK'S OFFICE

TO: Anthony J. LoPresti, Esq.
Attorney for Plaintiff
310 Old Country Road, Ste. 103
Garden City, NY 11530

Lewis, Johs, Avallone, Aviles, LLP
Attorneys for Defendant Allstate Insurance Company
425 Broad Hollow Road
Melville, NY 11747


Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
Attorneys for Defendant Beval Agency, Inc,
3 Gannett Drive
White Plains, NY 10604

9