UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------

| | | |
|---|---|---|
| WESTPORT INSURANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 10 CV 2188 (RMB) (THK) |
| | ) | |
| THE HAMILTON WHARTON GROUP, INC., | ) | |
| WALTER B. TAYLOR, individually, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| INTER-COMMUNITY MEMORIAL | ) | |
| HOSPITAL OF NEWFANE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

----------------------------------------------------------------


### WESTPORT INSURANCE CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO THE HAMILTON WHARTON GROUP, INC.'S AND WALTER B. TAYLOR'S APPLICATION FOR FEES AND COSTS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………………1

ARGUMENT……………………………………………………………………………...2

I.  Applicable Legal Standards………………………………………………………...2

II.  Hamilton Wharton's Fee Request Is Egregiously Excessive And Unreasonable And
     Must Be Rejected………………………………………………………………...3

A. The Excessive Proposed Hourly Rates Are Unreasonable……………………..3

B. Hamilton Wharton Has Not Established That The Rates Were Actually
   Accepted…………………………………………………………..……9

C. The Request For Fees Arising From Offensive Litigation Activity Is Not
   Recoverable…………………………………………………………....10

D. The Proposed Time Entries Are Not Reasonable………………………………..11

    1. Facially Excessive Entries……………………………………..…...12

    2. Vague and Incomplete Block Entries…………………………………15

E. Fee Entries Attributable To Defense Of Underlying Litigation Or Unrelated
   Matters Are Not Recoverable…………………………………………………16

F. Law Firm Overhead And Disbursements Are Not Recoverable………………...17

CONCLUSION…………………………………………………………………………..18

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Alfano v. CIGNA Life Ins. Co. of New York*, 2009 WL 890626 (S.D.N.Y. Apr. 2, 2009)…..……5

*Arbor Hill Concerned Citizens Assoc. v. County of Albany*, 522 F.3d 182
(2d Cir. 2008)……………………………………………………………………....2,3,4,7,9

*Baumis v. General Motors Corp.*, 102 A.D.2d 961 (N.Y. App. Div. 1984)……………..……17

*Bell v. Helmsley*, 2003 WL 21057630 (N.Y. Sup. Ct. Mar. 27, 2003)…………………………17

*Blum v. Stenson,* 465 U.S. 886 (1984)……………………………………………………………3

*Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.,* 639 F. Supp. 1401
(S.D.N.Y. 1986)…………………………………………………………………………………10

*Crescent Publishing Group, Inc. v. Playboy Enterprises*, 246 F.3d 142 (2d Cir. 2001)…………9

*GA Ins. Co. of N.Y., v. Naimberg Realty Assocs.*, 233 A.D.2d 363 (N.Y. App. Div. 1996)………2

*Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998)…………………………………...…………12

*Guideone Specialty Mutual Ins. Co. v. Congregation Adas Yereim*, 2009 WL 3241757
(E.D.N.Y. Sept. 30, 2009)………………………………………………………………………5

*Hensley v. Eckerhart,* 461 U.S. 424 (1983)……………………………………….……3,12

*In re Lessig's Estate*, 1 N.Y.S.2d 566 (Sur. Ct. 1937)…………………………………...17

*In re Painewebber Ltd. Partnerships Litigation*, 2003 WL 21787410
(S.D.N.Y. Aug. 4, 2003)…………………………………………………………………15

*In re Stock Exchanges Options Trading Antitrust Litigation*, 2006 WL 3498590
(S.D.N.Y. Dec. 4, 2006)…………………………………………………………………12

*In re Will of Corya*, 563 N.Y.S.2d 581 (Sur. Ct. 1990)…………………………………17

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)……………………4

*Johnson v. General Mutual Ins. Co.*, 246 N.E.2d 713 (N.Y. 1969)……………………...2,11

*Klein v. Robert's Am. Gourmet Food, Inc.*, 28 A.D.3d 63 (N.Y. App. Div. 2006)……….…..15

*Luciano v. Olsten Corp.*, 109 F.3d 111 (2d Cir. 1997)……………………………….…12

*Lunday v. City of Albany*, 42 F.3d 131 (2d Cir. 1994)……………………………………..………..3

*Matter of Estate of Goldstein*, 509 N.Y.S.2d 984 (Sur. Ct. 1986)…………………….……17

*Matter of Estate of Mehr*, 576 N.Y.S.2d 993 (Sur. Ct. 1991)……………………………17

*McGrath v. Toys "R" Us, Inc.*, 356 F.3d 246 (2d Cir. 2004)…………………………….1….9

*Measom v. Greenwich & Perry Street Housing Corp.*, 752 N.Y.S.2d 194
(Civ. Ct. 2002)……………………………………………………………...…………3,16

*Mighty Midgets, Inc. v. Centennial Ins. Co.*, 389 N.E.2d 1080 (N.Y. 1979)………………..2,11

*Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306 (2d Cir. 1985)………………………..…..9

*Quaratino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999)………………………………12,13

*Rosso v. Pi Mgmt. Assocs., LLC*, 2006 WL 1227671 (S.D.N.Y. May 3, 2006)………………15

*Tatum v. City of New York*, 2010 WL 334975 (S.D.N.Y. Jan. 28, 2010)………………….6,7

*U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 822 N.E.2d 777 (N.Y. 2004)………………2

*U.S. Underwriters Ins. Co. v. Weatherization, Inc.*, 21 F. Supp. 2d 318 (S.D.N.Y. 1998)……...10

## PRELIMINARY STATEMENT

Plaintiff Westport Insurance Corporation ("Westport") submits this Memorandum of Law in support of its opposition to the attorney fee application submitted by The Hamilton Wharton Group, Inc. and Walter B. Taylor (collectively, "Hamilton Wharton"). Hamilton Wharton's fee application, which seeks fees and costs of $425,560.25, should be rejected because it is blatantly excessive and grossly unreasonable and therefore seeks an impermissible windfall for its counsel. New York jurisprudence does not allow such an award.

The egregiousness of Hamilton Wharton's request is exemplified by the sheer number of hours billed in the brief time this case was pending. In less than a year, during which time the case was largely inactive, fourteen different timekeepers billed a combined total of nearly 800 hours. Notably, discovery remained in its infancy and not a single deposition was conducted. Hamilton Wharton never even completed its document production. The 800 hours billed by Hamilton Wharton's counsel is more than the combined total hours spent by the plaintiff's counsel plus counsel for two of the defendants.

The glaring excess of Hamilton Wharton's fee request derives from a number of factors, all of which are unacceptable under the applicable case law. These include, but are not limited to: (1) the astronomical above-market hourly rates proposed by Hamilton Wharton's counsel Stroock, Stroock & Levin ("Stroock"); (2) the inappropriate inclusion of unrecoverable offensive litigation activity, which is not attributable to the defense of this matter; (3) the excessive number of hours spent on the limited activities in the litigation to date; (4) duplicative and inefficient activities; (5) improper vague and incomplete time entries and "block billing;" (6) over 100 hours for non-legal, administrative work which constitutes unrecoverable overhead; (7) the lack of even an offer of proof of the certainty of compensation; (8) entries attributable to the

defense of Hamilton Wharton in the underlying litigation, which are not recoverable; and, (9) inclusion of entries involving other, unrelated files.  In short, Hamilton Wharton's fee request exceeds the farthest reaches of conceivable reasonableness and must be rejected.

## ARGUMENT

### I.    Applicable Legal Standards

The Court's award of attorneys' fees to Hamilton Wharton must be guided by New York precedent which allows an insured, who prevails in an insurance coverage action brought by his insurer, to recover reasonable attorneys' fees incurred in defending against the insurer's action. *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 822 N.E.2d 777, 780 (N.Y. 2004); *see also Mighty Midgets, Inc. v. Centennial Ins. Co.*, 389 N.E.2d 1080, 1084-85 (N.Y. 1979); *see also Johnson v. Gen. Mut. Ins. Co.*, 246 N.E.2d 713, 714 (N.Y. 1969).   An award to a prevailing insured is limited to "an award of *reasonable* costs and attorney's fees incurred in defending the declaratory judgment action."  *GA Ins. Co. of N.Y., v. Naimberg Realty Assocs.*, 233 A.D.2d 363, 365 (N.Y. App. Div. 1996) (emphasis added).

The Second Circuit has set forth standards for determining the reasonableness of a fee application, including both hourly rate, as well as the number of hours, sought to be charged:

> The meaning of the term "lodestar" has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness.  This opinion abandons its use.  We think the better course – and the one most consistent with attorney's fees jurisprudence – is for the district court, in exercising its considerable discretion, to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.  . . . The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Arbor Hill Concerned Citizens Assoc. v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).

The amount of a reasonable fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). The Second Circuit has warned that in submitting a fee application, "counsel for the prevailing party must exercise 'billing judgment'; that is, he must act as he would under the ethical and market restraints that constrain a private sector attorney's behavior in billing his own clients." *Lunday v. City of Albany*, 42 F.3d 131, 133-34 (2d Cir. 1994). Here, neither the number of hours nor the rate charged falls within the bounds of reasonableness. Therefore, Hamilton Wharton did not meet its burden and the fee petition must be denied.

II.    **Hamilton Wharton's Fee Request Is Egregiously Excessive And Unreasonable And Must Be Rejected**

The blatant excess in Hamilton Wharton's fee application derives from a number of factors, all of which violate the standards of reasonableness that the Court must follow in passing on an award. Hamilton Wharton's fee request thus does not fall within the standard for such awards and must be rejected.

A.    **The Excessive Proposed Hourly Rates Are Unreasonable**

In attorney's fee cases, the prevailing party is entitled to no more than a "reasonable hourly rate;" if an attorney's "usual" or aspirational hourly rate is unreasonable, it is not allowed. *See, e.g., Blum v. Stenson,* 465 U.S. 886, 888, 896-97 (1984); *Hensley,* 461 U.S. at 433; *see also Arbor Hill,* 493 F.3d at 115-16. The party seeking recovery "bears[s] the burden to establish the reasonableness, necessity, and value of their attorney's services. The court may not make their case for them." *Measom v. Greenwich & Perry Street Housing Corp.*, 752 N.Y.S.2d 194, 196-97 (Civ. Ct. 2002) (internal citation omitted). In terms of reasonableness of the hourly rate, the Second Circuit has clarified that:

the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Arbor Hill*, 522 F.3d at 190. [1]

Hamilton Wharton's fee application was calculated using unreasonably high rates for the services provided. The top partner charged an hourly rate of $895, of counsel billed at $610-650 per hour, junior associates' rates ranged up to $465 per hour and non-legal staff billed at $250 per hour. Hamilton Wharton has failed to establish the reasonableness, necessity or value of such exorbitant rates, which do not reflect market rates for insurance coverage work in New York and which, for the most part, are not warranted by the level of expertise of the attorneys.

First, Hamilton Wharton has failed to submit any evidence to establish the market (and hence, reasonable) rate for insurance coverage attorneys in this locality. However, two other parties in this case, with New York counsel, have submitted such evidence, which demonstrates that Hamilton Wharton's counsel's rates are far in excess of the market for local insurance coverage attorneys. In this regard, we note that the Nursing Home Defendants and the Hospital Defendants each filed a fee petition (each of which has since been withdrawn). See Dkt. Nos. 122-25. The rates for these New York counsel retained in this coverage matter are relevant to the determination of reasonableness in this matter. The other fee applications indicate that the

---

[1] The *Johnson* factors referred to in the decision are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill Concerned Citizens Assoc. v. County of Albony*, 522 F.3d 182, 187 n.3 (2d Cir. 2008) (*quoting Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989)).

hourly rates for insurance coverage attorneys who litigated the same matter as Stroock fell within ranges far below those proposed by Hamilton Wharton: $300-$475 for partners; $175-$300 for associates; and $85 for paralegals.  See Dkt. Nos. 122-25.

The case law regarding fee awards in the *Mighty Midget* context also evidences rates for insurance coverage work much lower than those proposed by Hamilton Wharton and similar to those presented in this case by the non-insured defendants.  In *Guideone Specialty Mutual Insurance Co. v. Congregation Adas Yereim*, 2009 WL 3241757, at *3 (E.D.N.Y. Sept. 30, 2009), the Eastern District of New York found the following rate ranges acceptable for insurance coverage work: $200-$350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants.   Moreover, in *Guideone*, the attorneys unsuccessfully sought their "Manhattan rates": $450 for a senior partner, $375 for a junior partner, $300 for a junior associate.  *Id.* at *2-3; s*ee also Alfano v. CIGNA Life Ins. Co. of N.Y.*, 2009 WL 890626, at *3 (S.D.N.Y. Apr. 2, 2009) (Southern District of New York found that $450 was an acceptable partner rate in ERISA-related case).  We also note that the acceptable rate ranges for partners approved by the Eastern District in *Guideone* ($200-$350) is consistent with the rates currently paid by Westport to Manhattan counsel ($185 to $225).[2]  This evidence establishes that the rates charged by Stroock are at least two to three times the amount of rates charged for New York counsel in insurance coverage litigation unreasonable and should not be used in determining an award of fees in this case.

By contrast, the only support presented by Hamilton Wharton to attempt to meet its burden to establish the reasonableness of Stroock's rates in this insurance coverage action was a chart comparing rates charged by **bankruptcy** attorneys which was created by Stroock's own

---

[2] See Affidavit of Westport employee Karen Thurlow, Esq, attached hereto as Exhibit A, at ¶ 3.

Financial Restructuring Group. Westport respectfully submits that this so-called support should be disregarded because rates charged by counsel in bankruptcy cases are meaningless in determining a reasonable rate for insurance coverage counsel.  Bankruptcy is clearly a far different, highly specialized area than any other litigation area, including insurance coverage, and is recognized to garner significantly higher rates than almost any other area.  Affidavit of James Kienzle, Esq, attached hereto as Exhibit B, at ¶ 1 (attaching a survey concluding that the median partner rates for bankruptcy attorneys ranked fifth out of twenty-six legal specialties).

Interestingly, the Southern District of New York recently addressed this very issue in *Tatum v. City of New York*, 2010 WL 334975 (S.D.N.Y. Jan. 28, 2010).  In *Tatum*, the Court analyzed the hourly rate for fees requested by attorneys that successfully represented a pre-trial detainee in his civil rights claim against a correctional officer.  *Id*. at *1.  The two partners requested rates of $650 and $625 respectively (significantly less than the $895 charged by the senior partner in the instant action) and $125 for paralegals (one-half of the rate charged by the paralegals in the instant action).  *Id*. at *2.  In support of their fee application, the attorneys presented to the Court the fee application submitted by a large Manhattan firm in an unrelated bankruptcy case.  *Id*. at *4.

The Court noted that the partners did not work at the firm listed in the support for the fee application, nor were they bankruptcy lawyers.  *Id*.  The Court stated that the relevant standard for determining the reasonable rate was "what attorneys of comparable experience in *civil rights* litigation charge as an hourly rate."  *Id.* (emphasis in original).  The Court noted that the attorneys provided no supporting documentation of their actual hourly rates for similar services. *Id*.  The Court ultimately reduced the partners' rate to $450 and $400 per hour.  *Id*. at *4-5.  The Court found that $125 was a reasonable rate for a paralegal within the Southern District.  *Id*. at

\*5.   Thus, *Tatum* dictates that the bankruptcy attorney rate "survey" submitted by Hamilton Wharton to support its attorneys' exorbitant rates is not relevant to the determination of a reasonable insurance coverage rate and should be disregarded.

Moreover, the fee comparison chart provides little guidance due to the wide spectrum of rates set forth therein.   According to the chart, prevailing bankruptcy rates range from a low of $455 for partners to a high of $1175; for associates, the rates range from $175 to $930; and, $60 to $620 for paraprofessionals.   Thus, the chart produced by Hamilton Wharton as its **only evidence** to establish reasonableness is essentially useless because of the vast disparity in rates set forth therein.

Finally, any reliance on the chart is severely undercut by the fact that the chart was assembled by Stroock's own attorneys.   Without undertaking a comprehensive review of all fee petitions in bankruptcy cases or deposing the authors, it is impossible to verify the accuracy of the chart or to determine whether the chart was based on only those cases where high rates were charged.

Hamilton Wharton has made no attempt to support its attorneys' entitlement to rates equivalent to the high end of the highly specialized bankruptcy rates.   In this regard, a court must consider "the experience, reputation, and ability of the attorneys" and experienced attorneys may be entitled to a higher rate.   *Arbor Hill*, 522 F.3d at 187 n.3.   However, here, with the exception of Kevin Smith, none of the other attorneys at Stroock who billed significant time to this case appear to have any experience in insurance coverage litigation. (See Dkt. No. 120-3, Declaration of Kevin L. Smith In Support of The Hamilton Wharton Group Inc. and Walter Taylor's Application for Fees and Costs, Exhibit 3, Biography of Jeremy Rosof). For example, the biography of Attorney Jeremy Rosof, who is classified as an "of counsel" attorney and who

alone billed over 200 hours on this case at a rate between $610-650, establishes that he is a real estate specialist.[3]  His bio does not so much as mention insurance.  Given the downturn in the demand for real estate legal work, it is reasonable to assume that Mr. Rosof was assigned to this case because his real estate work load had dwindled.  However, the experience and ability of a real estate specialist certainly does not warrant an excessively high rate for insurance coverage work.

Similarly, the online biographies of the two very junior associates who worked on this matter, Derek Silverman, admitted to the bar in 2008 whose billing rate began at $395 and shot up (in a few months time by 18%) to $465, and Monica Hanna, admitted to the bar in 2010 and billed at $370, list their only practice as "litigation."  See Ex. B, Kienzle Affidavit at ¶ 5.  Thus, most of the Stroock team did not provide Hamilton Wharton with any specialized experience pertinent to insurance coverage issues which may have warranted a higher rate.

Hamilton Wharton has failed to meet its burden to establish that the hourly rates reflected in the invoices submitted in support of its fee petition are reasonable.  Hamilton Wharton has failed to establish the reasonableness, necessity or value of such exorbitant rates, which do not reflect market rates for insurance coverage work and which, for the most part, are not warranted by the level of expertise of the attorneys.  To the contrary, the material submitted herewith establishes that the fee request was calculated using unreasonably high rates for the services provided.  Accordingly, the fee petition must be denied.

---

[3] Attorney Rosof's website biography reads: "Jeremy Rosof conducts a broad-based commercial litigation practice with an emphasis on matters relating to real estate. Mr. Rosof's practice also encompasses adversary proceedings in bankruptcy court, environmental ("Superfund") cases, estate litigation, international disputes, securities and ERISA class actions, and other general commercial matters. He represents clients at all levels of the State and Federal courts and in alternative dispute resolution (ADR)".

**B.** **Hamilton Wharton Has Not Established That The Rates Were Actually Accepted**

In order to prevail on a petition for fees, the requesting party must establish the certainty of being compensated.  As stated by the Second Circuit in *Arbor Hill*, a reasonable rate is what a paying client would be willing to pay.   522 F.3d at 190.   The Second Circuit previously confirmed that actual payment is a factor to be considered in setting a reasonable attorney fee recovery because "where actual payments are not being made … lawyers and clients are more likely to inflate their estimations of what they would have agreed to as a reasonable fee." *Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306, 317 (2d Cir. 1985); *see also Crescent Publ'g Group, Inc. v. Playboy Enters.*, 246 F.3d 142, 151 (2d Cir. 2001) (holding that the actual billing arrangement is a significant factor in determining what fee is reasonable); *McGrath v. Toys "R" Us, Inc.*, 356 F.3d 246, 251 n.8 (2d Cir. 2004) ("Among the relevant factors identified are . . . the contingency or certainty of compensation.")

Hamilton Wharton has submitted no proof to carry its burden to establish that it actually paid Stroock's bills, and if so, how much has been paid.  In fact, the last invoice indicates that nearly $200,000 of the invoices submitted to this Court has not been paid.   Because there is no evidence whatsoever that these invoices have been paid, Hamilton Wharton is not entitled to any inference that the amount of fees requested is reasonable.  At a minimum, any amounts not paid are not reimbursable.

**C.** **The Request For Fees Arising From Offensive Litigation Activity Is Not Recoverable**

New York courts do not permit a prevailing insured to recover the costs of prosecuting any affirmative claims in a declaratory judgment action initiated by its insurer. *See, e.g., U.S. Underwriters Ins. Co. v. Weatherization, Inc.,* 21 F. Supp. 2d 318, 328 (S.D.N.Y. 1998)

("[S]ums incurred in prosecuting claims against the insurer, such as through counterclaims like those herein, are not recoverable."); *see also Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.,* 639 F. Supp. 1401, 1402-03 (S.D.N.Y. 1986) ("[U]nder New York law, . . . an insured may recover the reasonable legal expenses which it incurred in defense of a declaratory judgment action brought by the insurer to free itself from its obligation to defend; however, the expenses incurred in prosecuting claims against the insurer are not recoverable.")

In the instant case, Hamilton Wharton not only filed a counterclaim against Westport, it also filed a third-party complaint against its brokers, IIAC, Inc. ("IIAC") and Independent Insurance Agents & Brokers of New York, Inc. ("IIABNY").  IICA and IIABNY moved to dismiss Hamilton Wharton's third-party complaint and Hamilton Wharton filed a response brief to the motion.  The Stroock invoices include at least 90.4 hours for, among other things, drafting, preparing, and revising the counterclaim and third-party complaint and response to the brokers' motion to dismiss.  These entries total over $40,000 in fees which are not recoverable under binding precedent.

Hamilton Wharton also engaged in discovery in connection with the prosecution of its counterclaim and third-party action.  No discovery propounded by Hamilton Wharton was used in the summary judgment motions and therefore none of that activity was related to the duty to defend on which Hamilton Wharton prevailed.  Moreover, Hamilton Wharton's pursuit of discovery regarding Westport's other policyholders, other claims and other Westport declaratory judgment actions was unsuccessful and the court did not allow Hamilton Wharton to obtain such discovery.

Accordingly, all of Stroock's work undertaken to obtain such discovery in terms of court filings, conferences and so forth was not reasonably undertaken and should not be allowed.  The

Stroock invoices include at least 72.6 hours arising out of Hamilton Wharton's offensive discovery.  These entries total over $48,000 in additional fees which are not recoverable. *See Mighty Midgets,* 389 N.E.2d at 1085 ("The Appellate Division was also correct in modifying the judgment of [the] Trial Term by striking the award to the Midgets for the expenses to which it was put in bringing the action.  It is the rule in New York that such a recovery may not be had in an affirmative action brought by an assured to settle its rights, but only when he has been case in a defensive posture."); *see also Johnson*, 246 N.E.2d at 714 ("The insured is entitled to a modification awarding him damages for his expenses in defending these declaratory judgment actions.  He may not, however, recover the expenses of prosecuting his cross claims against the insurer.")

The inclusion in the fee petition of offensive litigation activity, including the pursuit of a counterclaim against Westport, the prosecution of a Third Party Complaint and related discovery activities, is not attributable to the defense of this matter and is not recoverable under prevailing law.

### D.    The Proposed Time Entries Are Not Reasonable

Hamilton Wharton's fee request, in the amount of $425,560.25, comprises an astonishing 645.4 hours of attorney time, and 147.9 hours of paralegal time, over a period of eleven months, in a case which was largely dormant during that time.   In this regard, it is important to note that the minimal litigation activity was as follows:

| | |
|---|---|
| March 12, 2010 | Westport's Complaint filed |
| April 27, 2010 | Notice of Appearance filed for Hamilton Wharton |
| May 6, 2010 | Initial Case Management Conference with Court |
| May 27, 2010 | Hamilton Wharton filed Answer and Counterclaim |
| June 28, 2010 | Hamilton Wharton propounds discovery requests on Westport |
| August 24, 2010 | Hamilton Wharton letter to Court to request pre-motion conference |
| August 27, 2010 | Hamilton Wharton files Third Party Complaint |

| September 28, 2010 | Court Pre-Motion Conference |
| October 12, 2010 | Westport propounded discovery requests on Hamilton Wharton |
| October 29, 2010 | Hamilton Wharton files motion for summary judgment |
| December 2, 2010 | Telephone Conference with Magistrate regarding discovery issues |
| December 6, 2010 | Telephone Conference with Magistrate regarding discovery issues |
| December 29, 2010 | Westport serves Amended Complaint |
| January 18, 2010 | Hamilton Wharton filed Answer and Counterclaim |
| February 8, 2010 | Westport and Hamilton Wharton produce documents |

The court held only two in-person conferences and did not hear oral argument on the motion for summary judgment. Moreover, Westport produced only a single box of documents in this case and requested that Hamilton Wharton produce only two boxes of documents. Given the limited activities undertaken in this matter, particularly those in defense of Westport's Complaint, Hamilton Wharton's fee request is unreasonable for the additional reason that it encompasses an excessive number of hours for the limited activities undertaken, includes duplicative and inefficient activity and also is based upon improper vague and incomplete time entries and "block billing."

### 1.  **Facially Excessive Entries**

In calculating a proper fee award, a court must exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *accord Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 n.6 (2d Cir. 1999); *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998); *Luciano v. Olsten Corp.*, 109 F.3d 111, 116-17 (2d Cir. 1997); *In re Stock Exchs. Options Trading Antitrust Litig.*, 2006 WL 3498590, at *11 (S.D.N.Y. Dec. 4, 2006).

The egregiousness of Hamilton Wharton's fee petition is demonstrated by the sheer number of hours billed in the brief time this case was pending:  in less than a year, during which time the case was largely inactive, fourteen different timekeepers billed a combined total of

nearly 800 hours.  Notably, the only discovery conducted was written discovery – no depositions were conducted.  Hamilton Wharton never even completed its document production.

The 800 hours billed by Hamilton Wharton's counsel is more that the combined total hours spent by the plaintiff's counsel plus counsel for the two defendants who previously sought fees.  By contrast, counsel for the Plaintiff Westport, billed just over 400 hours in the same time period covered by Hamilton Wharton's fee petition.[4]  See Ex. A, Thurlow Affidavit at ¶ 4.

Simple details regarding Stroock's invoices demonstrate the excessive nature of the billings.  For example, Stroock employed 14 timekeepers over the 11 months of this case, who collectively billed nearly 800 hours.   The highest number of hours billed by any single Stroock timekeeper was 274.6 hours by Associate Derek Silverman, who worked on this case for only a few months. As a reference point, Westport's team comprised only seven timekeepers and the highest billing associate billed only 138 hours over the same 11 month period.  See Ex. A, Thurlow Affidavit at ¶¶ 5-6.    Stroock's hours are clearly excessive and should not be reimbursed.  *See Quaratino*, 166 F.3d at 426.

The most glaring examples of excessive entries are those that pertain to the summary judgment papers filed by Stroock on Hamilton Wharton's behalf.  The invoices include at least 225.8 hours of entries for drafting, preparing, and revising Hamilton Wharton's summary judgment motion and reply brief.  These entries do not reflect the time spent on pre-motion letters to the Court **or** large amounts of time entries detailing legal research performed before any drafting began.  Thus, Stroock spent over 225 hours drafting, revising, editing and finalizing the actual motion papers.

---

[4] By disclosing this information, Westport does not waive any privileges or protections afforded to the work performed by its counselor any advice or communications related thereto and in fact reserves all rights to any further disclosure regarding such work.  This limited disclosure was made for the sole purpose of providing evidence to oppose Hamilton Wharton's fee petition and for no other purpose.

Associate Derek Silverman spent over 160 hours alone on the summary judgment papers, regularly logging single entries well over 5 hours with short, vague descriptions such as "work on motion for summary judgment."  On December 10, 2010, Mr. Silverman listed a single entry of 8.9 hours with the following description: "Drafting and revisions to reply memorandum to Hamilton Wharton's motion for summary judgment."  These 8.9 hours spent "drafting and revising" Hamilton Wharton's reply brief came after Mr. Silverman spent 26.6 hours analyzing Westport's opposition brief, conducting research and drafting Hamilton Wharton's reply and **before** any partner had reviewed Mr. Silverman's work product.  Mr. Silverman entered five more entries regarding the summary judgment work following his 8.9 hours of revisions to the reply, said entries totaling .9, 6.4, 5.7, 5.9 and 3.3 hours, respectively.

Moreover, as noted above, Attorney Rosof, a real estate specialist, was the second highest biller on the case for Hamilton Wharton and billed over 200 hours.  It would appear that the exorbitant hours he devoted to this case are attributable to a learning curve to educate himself about insurance coverage issues.  His hours are thus excessive and should not be allowed.

As a final example, the invoices reflect billing by Associate Monica Hanna for 43.3 hours during the month of February 2011 with the description: "Document Review".  Given that the invoices do not reflect the purpose or basis for any review and do not reflect what documents were reviewed, these entries appear excessive on their face.  It may be that these entries relate to the review of the 4600 pages of documents which Westport selected for copying from Hamilton Wharton's files in February 2011, as mentioned in paragraph 24 of Kevin Smith's Declaration (See Dkt. No. 120).  In that case, the 43 hours are certainly excessive to review two boxes of documents.

Finally, a cursory review of the invoices reveals that many of the timekeepers performed duplicative tasks and spent an inordinate amount of time on even routine matters.  For example, it was Stroock's regular practice to have two or more attorneys prepare for and participate in telephone conferences with opposing counsel, the client and others on even the most simple issues.[5]  Duplicative time was unnecessary and demonstrates the unreasonable nature of the fee petition.  Stroock's entries for these activities are clearly excessive and should be dramatically reduced.

### 2.    <u>Vague And Incomplete Block Entries</u>

The Court has discretion to reduce a fee award where the documentation of hours is "vague or incomplete".  *E.g., Rosso v. Pi Mgmt. Assocs., LLC*, 2006 WL 1227671, at *2 (S.D.N.Y. May 3, 2006) (*citing In re Painewebber Ltd. P'ships Litig.*, 2003 WL 21787410, at *4 (S.D.N.Y. Aug. 4, 2003)).   Block time entries, for example where four or more hours are recorded for multiple tasks, are not sufficiently specific time entries.   *Klein v. Robert's Am. Gourmet Food, Inc.*, 28 A.D.3d 63, 75 (N.Y. App. Div. 2006) (general descriptions of work performed were insufficient to support an award of attorney's fees, where, for example, the firm attributed 481 hours of work to "drafting of pleadings, review of discovery, drafting of memoranda of law, and participation in settlement negotiations").

Stroock's invoices are replete with vague, incomplete and block entries that do not adequately describe work performed.  For example, Stroock's invoices include at least 30 entries, of 4.0 hours or more, containing inadequate/vague descriptions.   These 30 entries total 137.1 hours of billed time resulting in fees over $68,800.   From February 8 to February 22 alone,

---

[5] See, e.g., Dkt. 120-2, at 4, 9, 23, 43 and 44, entries dated April 26, 2010, May 13, 2010, August 24, 2010, November 12, 2010, and November 16, 2010.

Associate Monica Hanna billed 43.3 hours with the sole description: "Document Review". Again, the party seeking recovery "bear[s] the burden to establish the reasonableness, necessity, and value of their attorney's services. The court may not make their case for them." *Measom*, 752 N.Y.S.2d at 196-97 (internal citation omitted). Hamilton Wharton has not met its burden to establish the reasonableness or necessity of its many vague and incomplete entries and such entries should therefore be stricken.

**E. <u>Fee Entries Attributable To Defense Of Underlying Litigation Or Unrelated Matters Are Not Recoverable</u>**

Stroock's invoices include entries attributable to the defense of Hamilton Wharton in the underlying litigation, which are not recoverable because they are not related to the defense of the insurance action.  The fee petition includes entries by or which mention Attorneys Richard Lilling and Martin Minkowitz, who are both tasked with defending the underlying litigation.  In fact, Minkowitz is acting as personal counsel to Hamilton Wharton Group in the underlying matters.

In addition, certain entries on their face relate to a tolling agreement or other activity in the underlying cases (e.g., May 19, 2010 entry for motion papers in Niagara action, July 7, 2010 entry to review Newfane and AT&T decisions on motions to dismiss).  The Stroock invoices include at least 21.7 hours of entries for involving the defense of Hamilton Wharton in the underlying litigation.  These entries total over $15,750 in unrecoverable fees.

Stroock's invoices contain at least two entries involving other, unrelated files.  These entries total 2.1 hours, totaling fees of $743.50.  Entries involving other files are obviously not recoverable and the inclusion of such entries causes Westport to question whether other vague, incomplete entries truly involve unrelated files.

These activities are not attributable to the defense of the declaratory judgment action and should be stricken.

**F.  Law Firm Overhead And Disbursements Are Not Recoverable**

New York courts have generally held that an award of attorney's fees may not include reimbursement of expenses for "*matters or services* which are a necessary part or adjunct of a properly equipped lawyer's office."  *Baumis v. Gen. Motors Corp.*, 102 A.D.2d 961, 963 (N.Y. App. Div. 1984) (internal quotation omitted) (emphasis added); *see also In re Lessig's Estate*, 1 N.Y.S.2d 566, 568 (Sur. Ct. 1937) (declining to reimburse an attorney for expenses incurred by hiring an investigator who "served subpoenas upon the witnesses and assisted in the factual preparation of the case").  In fact, any time spent in an administrative, non-legal capacity, even if by a timekeeper, is not recoverable under New York law.  *Matter of Estate of Goldstein*, 509 N.Y.S.2d 984, 986 (Sur. Ct. 1986) ("[t]he cost of paralegals as a general rule is an administrative expense of the law firm that falls within office overhead and therefore is not reimbursable").  Fees for these services "should be absorbed by the firm as office overhead, rather than be separately billed …." *In re Will of Corya*, 563 N.Y.S.2d 581, 589 (Sur. Ct. 1990), *rev'd on other grounds*, 175 A.D.2d 162 (N.Y. App. Div. 1991).

In addition, New York courts have held that disbursements should be considered as part of law firm overhead. *See, e.g., Bell v. Helmsley*, 2003 WL 21057630, at *7 (N.Y. Sup. Ct. Mar. 27, 2003) (disallowing reimbursement for computerized research, secretarial overtime, postage, text editing, and litigation support services because these items are considered overhead); *Matter of Estate of Mehr*, 576 N.Y.S.2d 993, 995 (Sur. Ct. 1991) (decreasing the amount of disbursements awarded as part of an attorney's fee award because certain disbursements represented law firm overhead).

In the instant case, Stroock's invoices are replete with improper overhead and time spent on unrecoverable administrative activities. For example, Christine Stygar (a non-attorney) spent nearly 100 hours (at a rate of $250 per hour) performing administrative, non-legal work of scanning documents and electronically saving them to an internal system. Moreover, claimed disbursements comprise nearly entirely non-reimbursable overhead items (e.g., in-house duplication costs, telephone charges, meals, overtime, local transportation, postage, "Calendar Watch", electronic legal research, messenger service). Neither the clerical time billed by non-attorneys Stygar, Tse or Tyson, nor the disbursements are recoverable. Stroock's disbursements totaled $30,962.25. Non-attorneys Stygar, Tse and Tyson billed a total of 128.3 hours resulting in paralegal fees totaling $32,150. These amounts must be stricken from the fee petition.

<u>**CONCLUSION**</u>

Hamilton Wharton's fee application, which seeks fees and costs of $425,560.25, should be rejected because Hamilton Wharton has failed to meet its burden to establish the reasonableness, necessity, or value of its counsel's services. For the reasons set forth above, the fees requested are blatantly excessive and grossly unreasonable and seek an impermissible windfall for its counsel.

In the alternative, at the very least, the proposed hourly rates should be significantly reduced, the patently excessive, vague and incomplete entries rejected, the legally improper entries stricken and a substantial across-the-board percentage deduction applied. Based on the foregoing, the following rates are reasonable for the attorneys that billed significant time on the action: $450 for Kevin Smith; $400 for Jeremy Rosof; and, $250 for Derek Silverman. After eliminating the hours each attorney billed towards unrecoverable tasks, the proposed rate reductions produce the following results:

| Attorney | Total Hours Billed | After Deduction of Unrecoverable Tasks | Proposed Reduced Rate | Sum of Reduced Hours and Proposed Rate |
|---|---|---|---|---|
| Kevin Smith | 109.7 | 77.9 | $450 | $35,055 |
| Jeremy Rosof | 214.8 | 128.3 | $400 | $51,320 |
| Derek Silverman | 274.6 | 127.8 | $250 | $31,950 |
| | | | | = **$118,325** |

Finally, after eliminating unrecoverable fees and costs, duplication of efforts, efficiency and certainty of payment must be factored into the equation.  Applying a 20% across-the-board deduction to $118,325 for file churning, inefficiency, duplication of efforts and uncertainty of payment results in recoverable fees totaling $94,600.  In the alternative, Westport contends that $94,600 is a reasonable fee for the services rendered to Hamilton Wharton by Stroock.

Westport also respectfully requests such other and further relief as the Court deems just and proper.

Date:  March 9, 2011

Respectfully submitted,

/s/James W. Kienzle
*One of the attorneys for Plaintiff*
*Westport Insurance Corporation*

Robert P. Conlon (Admitted *Pro Hac Vice*)
Joyce F. Noyes (Admitted *Pro Hac Vice*)
James W. Kienzle (Admitted *Pro Hac Vice*)
WALKER WILCOX MATOUSEK LLP
225 West Washington Street – Suite 2400
Chicago, Illinois  60606
312-244-6700
Facsimile: 312-244-6800

-and-

Gregg D. Weinstock
GARBARINI & SCHER, P.C.
432 Park Ave. South
New York, NY 10016-7790

212- 689-1113
Facsimile: (212) 725-9630